Filed 6/24/14  P. v. Cardenas CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B250650 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. VA119712) |
| JOSE CARDENAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert J. Higa, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Kimberley J. Baker-Guillemet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In an information filed by the Los Angeles County District Attorney, defendant and appellant Jose Cardenas was charged with 11 offenses: five felony counts of aggravated sexual assault of a child under the age of 14 – oral copulation (counts one through five; Pen. Code, § 269, subd. (a)(4))[1] and six felony counts of committing a lewd and lascivious act upon a child under the age of 14 (counts six through 11; § 288, subd. (a).) Counts six through 11 were alleged to be serious felonies within the meaning of section 1192.7, subdivision (c).

Appellant pleaded not guilty to all counts and denied the special allegations. Trial was by jury. Appellant was found guilty as charged.

The trial court denied probation and sentenced appellant to 77 years to life in prison.

Appellant timely filed a notice of appeal. On appeal, he argues that the admission of the complaining witness's preliminary hearing testimony violated his Sixth Amendment right to confrontation.

We affirm.

## FACTUAL BACKGROUND

I. *Prosecution Evidence*

A. Complaining Witness's Testimony[2]

Appellant is J.C.'s father. In 2010, when J.C. was just 11 years old, appellant began molesting her.

J.C. remembered talking to Detective John Carlin when he went to her school. She recalled telling him about her father touching her, but she did not remember how many times and on how many occasions her father had touched her.

---

[1]   All further statutory references are to the Penal Code unless otherwise indicated.

[2]   The victim's account is taken from the preliminary hearing transcript, which was admitted at trial as People's Exhibit No. 1b, due to her unavailability at trial. Because the sole issue on appeal is whether appellant's Sixth Amendment right was violated, we do not set forth a lengthy recitation of the facts.

When appellant touched J.C. inappropriately, he was drunk. One day, when appellant was sober, J.C. confronted him and "told him what he had done to [her]." Appellant apologized to J.C. and promised never to do it again. Since the apology, he has not touched J.C.

At some point later, J.C. told two friends that her father had molested her.

B. Police Interviews of J.C.

Detective Carlin is a Child Abuse detective with the Los Angeles County Sheriff's Department's Special Victims Bureau. During an interview with J.C. at her school on May 9, 2011, J.C. told Detective Carlin that appellant had molested her "about six or seven times total," making skin-to-skin contact. She described two incidents. J.C.'s demeanor was very timid and shy, and "she appeared like she wanted to hold back crying."

On May 11, 2011, Detective Carlin, the preliminary hearing prosecutor, and Sylvia Nunez, a victim advocate, met with J.C. at the courthouse. On that occasion, J.C. described a time when she drove to work with her father. At least four times during that drive, appellant threatened to kill himself if J.C. did not submit to his molestation. Each time, J.C. complied.

According to J.C., the molestation began in January or February 2010 and ended in June or July 2010. During the interview, J.C. "appeared very scared and also shy and reluctant to tell . . . what happened."

C. Police Interview of Appellant

On May 9, 2011, Detective Carlin interviewed appellant while he was in custody on the instant charges. He told Detective Carlin that he used to drink a lot. He also admitted that he molested J.C. on two occasions.

Appellant told Detective Carlin that when he was drunk, he would "touch her" inappropriately. He admitted that he touched her inappropriately on at least 10 separate occasions, making skin-to-skin contact.

Appellant said that he felt badly about what happened; he knew what he did was wrong. Appellant apologized to J.C. for what happened.

3

Finally, appellant told Detective Carlin that J.C. was not lying about what she had reported.

II. *Defense Evidence*

The defense did not present any evidence.

## DISCUSSION

Appellant argues that his convictions should be reversed because the admission of J.C.'s preliminary hearing testimony violated his Sixth Amendment right to confrontation. Specifically, he contends that, notwithstanding our Supreme Court's decision in *People v. Seijas* (2005) 36 Cal.4th 291 (*Seijas*), appellant's rights were improperly abrogated by the admission of the victim's preliminary hearing testimony at his trial because "the motive and opportunity [were] different in kind."

A. Relevant Proceedings

J.C. testified at the preliminary hearing and was subject to cross-examination. Prior to trial, defense counsel stated, "As the court is aware, [J.C.], the alleged victim in this case, is not present." Defense counsel then stated that he was aware that the prosecution planned to read the transcript of J.C.'s preliminary hearing testimony into the record at trial. He also stated that her preliminary testimony had been impeached by Detective Carlin's preliminary hearing testimony. Further, defense counsel stated that the prosecution intended to call Detective Carlin to testify at trial to impeach J.C.'s preliminary hearing testimony. Defense counsel argued that, pursuant to Evidence Code section 402, permitting Detective Carlin to be called to impeach J.C.'s preliminary hearing testimony without her being present violated his federal and state confrontation rights.

Defense counsel continued: "We do not have and won't have the opportunity to rehabilitate her, or to question her on those issues that Detective Carlin will be using to impeach her on. And even though she testified at the preliminary hearing, and even though she was represented by—my client was represented by private counsel, and he did cross-examine her and cross[-]examine the detective at the time on the impeachment

4

issues, as the court knows, the preliminary hearing is pretty much limited in terms of what we can actually put on.

"Obviously, putting her back on for rehabilitation might exceed the scope of an affirmative defense for the purposes of preliminary hearing and, therefore, I don't believe my client had the full opportunity to cross-examine and examine the witness with respect to the impeaching areas."

Defense counsel also objected to Detective Carlin reading the transcript of his preliminary hearing testimony at trial.

The prosecutor argued that she would be introducing the entire preliminary hearing testimony of J.C. because she was an unavailable witness. She also would present the preliminary hearing transcript of Detective Carlin's impeaching testimony because Evidence Code section 1294 "allows for the submissions of the transcript where the inconsistent statements are, so [she would] have [Detective] Carlin read his preliminary hearing transcript testimony." At the preliminary hearing, J.C. disclosed "much of the molestation" during her testimony, but then began to "recant some—or [state] 'I don't remember.'" The prosecutor at the preliminary hearing then "properly impeached" J.C. by asking her about statements she made to Detective Carlin, to which she again responded that she did not remember. The prosecutor then called Detective Carlin to the stand at the preliminary hearing to ask specific questions about what J.C. had told him.

The trial court ruled: "If it's an objection, it's overruled. If it's a motion. It's denied."

B. Forfeiture

The People argue that this issue has been forfeited on appeal because appellant did not object to the introduction of J.C.'s preliminary hearing testimony. We agree.

"It is 'the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal.' [Citations.]" (*People v. Raley* (1992)

5

2 Cal.4th 870, 892; see also Evid. Code, § 353; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1118.)

Here, the appellate record confirms that appellant did not object to the introduction of J.C.'s preliminary hearing testimony. Rather, he objected to the introduction of Detective Carlin's preliminary hearing testimony and to having Detective Carlin testify at trial for the purposes of impeachment. Because appellant failed to timely object below, he cannot raise this claim on appeal. (*Seijas*, *supra*, 36 Cal.4th at p. 303.)

Appellant does not dispute that he did not properly object; instead, in his reply brief, he only argues that "any objection would have been futile under the rule established by the [Supreme] Court in *Seijas*." We disagree. Given the nature of the argument raised on appeal, which presumably could have been the same argument raised below, an objection would have afforded the trial court the opportunity to hear the arguments of counsel on the issue and to exercise its discretion as to the admissibility of the evidence. Additionally, appellant does not refer us to any place in the record to demonstrate how an objection would have been futile. In the absence of an objection, we conclude that appellant may not, for the first time on appeal, raise this argument.

 C. <u>No Sixth Amendment Violation</u>

Regardless, no Sixth Amendment violation occurred. Both the federal and California Constitutions protect a criminal defendant's right to confront the witnesses against him. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) That right includes the right to rehabilitate a witness. (See, e.g., *People v. Carter* (1957) 48 Cal.2d 737, 752–753 [same due process interest in rehabilitation evidence as in impeachment evidence].) A defendant's right to confront his accuser, however, is not absolute. (*Seijas*, *supra*, 36 Cal.4th at p. 303.)

A witness's prior testimony may be used against a criminal defendant at trial only when the witness is unavailable and the defendant "was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at" trial. (Evid. Code, § 1291, subd. (a)(2); see also *Seijas*, *supra*, 36 Cal.4th at p. 303 [admission

6

of prior testimony by an unavailable witness does not violate the Sixth Amendment if the defendant had both an opportunity to cross-examine the witness at the prior hearing and "'"'an interest and motive similar to that which he has at the [subsequent] hearing"'"'"].) When the requirements of Evidence Code section 1291 are met, admitting the witness's prior testimony does not violate the constitutional right of confrontation. (*People v. Herrera* (2010) 49 Cal.4th 613, 621.)

In *Seijas*, the Supreme Court held that the preliminary hearing testimony of an unavailable witness was admissible at trial so long as the defendant had a prior opportunity to cross-examine the witness. (*Seijas*, *supra*, 36 Cal.4th at p. 303; see also *People v. Herrera*, *supra*, 49 Cal.4th at p. 621.) In fact, the California Supreme Court has repeatedly rejected contentions that a defendant's opportunity to cross-examine an unavailable witness at the preliminary hearing was inadequate to permit admission of the former testimony at trial. (*People v. Herrera*, *supra*, at pp. 621–622.)

Here, both requirements—unavailability and a prior opportunity to cross-examine—were met. At some point prior to trial, the parties became aware that J.C. was unavailable to testify at trial. Defense counsel lodged no objection to the fact that J.C. was legally unavailable. Further, appellant appears to concede that the first requirement has been satisfied as he does not argue otherwise in his opening brief.

Appellant also had an opportunity to cross-examine J.C. at the preliminary hearing. Appellant so conceded prior to trial, when he reiterated that appellant "was represented by private counsel, and he did cross-examine" her. And, to the extent that she may have been impeached by Detective Carlin, J.C. was excused from the preliminary hearing "subject to recall"; appellant could have recalled her at the preliminary hearing after Detective Carlin testified to rehabilitate her—he chose not to do so. (*People v. Smith* (2003) 30 Cal.4th 581, 611–612 ["'As long as defendant was given the opportunity for effective cross-examination, the statutory requirements [of Evidence Code section 1291] were satisfied; the admissibility of this evidence did not depend on whether defendant availed himself fully of that opportunity'"].)

Urging reversal, appellant argues that preliminary hearings do not afford defendants the opportunity to have constitutionally adequate confrontation because "varying (and conflicting) degrees of guilt are advanced by the prosecution at the preliminary hearing." In a similar vein, appellant asserts that his convictions must be reversed because he did not have the opportunity to rehabilitate the impeached witness during the preliminary hearing, but "at trial, there would be the absolute right to do so, and interest in so doing." California courts have held otherwise. (See, e.g., *People v. Valencia* (2008) 43 Cal.4th 268, 293–294 ["a defendant's interest and motive at a second proceeding is not dissimilar to his interest at a first proceeding within the meaning of Evidence Code section 1291, subdivision (a)(2), simply because events occurring after the first proceeding might have led counsel to alter the nature and scope of cross-examination of the witness in certain particulars"].)

It follows that we reject appellant's reliance upon court opinions from other states. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
        ASHMANN-GERST

We concur:


_____, P. J.
        BOREN


_____, J.
        CHAVEZ